IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

      Plaintiff,

v.                                                      No. CR 09-2474 RB

**GARFIELD WAYNE BERNARD** and
**JULIO ANTONIO CAMPBELL**,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Bernard's Motion to Suppress Evidence and Statements based on discriminatory enforcement of the law in violation of the Fifth Amendment and Fourteenth Amendments. (Doc. 53). Defendant Campbell joined in this Motion. (Doc. 55). Having considered the arguments of counsel, record, relevant law, and being otherwise fully informed, the Court grants Defendants' Motion.

**I.    Background.**

Defendants were arrested at the New Mexico Motor Transportation Division (NMMTD) Port of Entry (POE) in Lordsburg, New Mexico, after NMMTD Officer Ben Strain discovered more than 270 kilograms of marijuana in their tractor-trailer rig. (Doc. 1). The Indictment charges Defendants with conspiracy to commit possession with intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. § 846, and possession with intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and aiding and abetting, in violation of 18 U.S.C. § 2. (Doc. 20).

Mr. Bernard filed a Motion to Suppress Evidence and Statements, in which Mr. Campbell

joined, arguing, *inter alia*, that they were subjected to selective enforcement of the law on the basis of their race[1] in violation of the Fifth and Fourteenth Amendments to the United States Constitution. (Docs. 53 and 55). Defendants also filed a Motion for Independent Analysis, a Motion to Suppress All Evidence Relating to Trailer Seal, and a Notice of Brady Request. (Docs. 49, 50, and 51). After holding an evidentiary hearing on Defendants' motions and Brady request, the Court issued Findings of Fact and Conclusions of Law in which the Court reserved ruling on the discriminatory enforcement claim, granted the Brady request, and denied Defendants' other claims. (Doc. 90).

At the request of the parties, the Court held this case in abeyance until resolution of a civil matter that arose from an inspection of a Black trucker by Officer Strain at the Lordsburg POE. (Doc. 95). *See Blackwell v. Denko, et al.*, CIV 09-0377 MCA/WPL. The plaintiff in *Blackwell* alleges, *inter alia*, that Officer Strain targets vehicles driven by Black truckers for detention, inspection, and search in violation of the Fifth and Fourteenth Amendments. *Id.* Currently, the civil matter, which is assigned to the Honorable M. Christina Armijo, is on interlocutory appeal from Judge Armijo's denial of qualified immunity. *See Blackwell v. Denko, et al.*, 11-2078. Oral argument is scheduled for January 18, 2012. *Id.*

On November 18, 2010, February 22, 2011, April 20, 2011, May 11, 2011, and July 15, 2011, the Court granted the parties' requests to continue this case pending resolution of the *Blackwell* case. (Docs. 95, 98, 101, 106, and 116). On July 15, 2011, the Court ordered supplemental briefing of the discriminatory enforcement claim at the joint request of the parties. (Doc. 115). The supplemental briefs have been filed and considered by the Court. (Docs. 118 and 126).

---

[1] Defendants are Black men.

**II.     Discussion.**

Defendants contend that Officer Strain targeted them for a more rigorous inspection because they are Black.  It is important to note that Defendants do not rely on the Fourth Amendment to support their claim of racially selective law enforcement.  Indeed, the Supreme Court has held that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996).  Thus, *Whren* forecloses a Fourth Amendment claim based on the subjective motivation of the officer involved.  *Id.*  For this reason, Fourth Amendment cases, such as *United States v. Botero–Ospina*, 71 F.3d 783 (10th Cir. 1995), are inapplicable to Defendants' claim for discriminatory enforcement of the law.

Consistent with *Whren* and long-established Supreme Court jurisprudence, Defendants rely on the equal protection component of the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment.[2]  (Doc. 53 at 4-6).  For well over a century, the Supreme Court has held that a law which is "fair on its face and impartial in appearance" may nonetheless constitute illegal discrimination "if it is applied and administered by public authority with an evil eye and an unequal hand." *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) (finding that where Chinese nationals did not violate city ordinances but were still fined, the only reason for the fines was discrimination based on race and nationality in violation of equal protection).  *Whren* explained that "the Constitution prohibits selective enforcement of the law based on considerations such as race [and] the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause . . . ." *Whren*, 517 U.S. at 813.

---

[2] While the Fifth Amendment contains no equal protection clause, the equal protection standards of the Fourteenth Amendment are incorporated into the Fifth Amendment's promise of due process.  *United States v. McHorse*, 179 F.3d 889, 897 (10th Cir. 1999).

The Tenth Circuit has stated that "[r]acially selective law enforcement violates this nation's constitutional values at the most fundamental level; indeed, unequal application of criminal law to white and black persons was one of the central evils addressed by the framers of the Fourteenth Amendment." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). Undoubtedly, "[r]acial profiling issues concerning the intentional discriminatory application of the law are the province of the Equal Protection Clause." *United States v. Flores-Olmos*, Slip Copy, 2011 WL 4059044 *2 (10th Cir. 2011) (unpublished); *see also United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1263-64 (10th Cir. 2006); *United States v. Benitez*, 613 F. Supp. 2d 1099, 1101 (S.D. Iowa 2009).

To establish a racially selective law enforcement claim, a defendant must prove that (1) the law enforcement officer's actions had a discriminatory effect, and, (2) the officer was motivated by a discriminatory purpose. *Alcaraz-Arellano*, 441 F.3d at 1264 (internal quotation and citation omitted); *see also United States v. Armstrong*, 517 U.S. 456, 465 (1996) (holding a defendant making a selective-prosecution claim must establish two elements: "the federal prosecutorial policy had a discriminatory effect and it was motivated by a discriminatory purpose."). If the claimant shows both discriminatory effect and purpose, the burden shifts to the Government to show the same enforcement decision would have been made even if the discriminatory purpose had not been considered. *United States v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996).

In order to show discriminatory effect, the defendant "must make a credible showing that a similarly-situated individual of another race could have been, but was not, stopped or arrested for the offense for which the defendant was stopped or arrested." *Alcaraz-Arellano*, 441 F.3d at 1264 (quotation omitted). The defendant may satisfy the "credible showing" requirement by identifying

4

a similarly-situated individual or through the use of statistical evidence. *United States v. James*, 257 F.3d 1173, 1179 (10th Cir. 2001). "[T]he proffered statistics must address the critical issue of whether that particular group was treated differently than a similarly-situated group." *James*, 257 F.3d at 1179. The Court acknowledges that the law imposes a nearly impossible burden on Defendants to show that Officer Strain did not stop truck drivers of other races, with drugs, passing though the Lordsburg POE. *See United States v. Mesa-Roche*, 288 F. Supp. 2d 1172, 1186 (D. Kan. 2003) (discussing the difficulty of showing that "a similarly situated individual was not stopped"). However, on these facts, the burden has been carried as best it can be.

Officer Strain testified at the suppression hearing that 100% of the defendants in federal court cases in which he was directly involved have been Black. While this fact is troubling in itself, the Court takes judicial notice of the record in *Blackwell v. Denko, et al.*, CIV 09-0377 MCA/WPL. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) (stating that courts "may exercise . . . discretion to take judicial notice of publicly-filed records . . . concerning matters that bear directly upon the disposition of the case at hand."). In *Blackwell*, a civil action challenging unequal application of the law, the plaintiff presented the testimony of James Williams, Ph.D., as evidence that law enforcement activities by NMMTD personnel at the Lordsburg POE have a discriminatory effect on Black truckers. Judge Armijo found that:

> [Dr. Williams'] data tends to show that vehicles operated by Black truckers are subjected to inspections or searches at a much higher rate than vehicles operated by non-Black truckers. [Doc. 76-1 at 3] Further, his data also tends to show that when MTD personnel cannot tell the ethnicity of a driver prior to instigating law enforcement activity, the percentage of Black truckers subjected to enforcement activity closely corresponds to the percentage of Black truckers on the road. [Doc. 76-1 at 3] Dr. Williams reports a significant disparity between the percentage of Black truckers reporting delays due to inspections and searches (51.7%) and the percentage of other truckers reporting delays (28.3%). [Doc. 76-1 at 3] Dr. Williams determined that 30.6% of the arrests by Officer Strain at the POE are

>Blacks, even though Black truckers make up only 14.6% of the truckers passing through the POE.  [Doc. 76-1 at 18].

*Blackwell v. Denko, et al.*, CIV 09-0377 MCA/WPL (Doc. 174 at 4-5).

This evidence makes clear that similarly-situated non-Black truckers are much less likely to be subject to more rigorous inspections and searches than Black truckers at the Lordsburg POE.  Given the testimony presented at the suppression hearing and that presented to Judge Armijo in *Blackwell*, Defendants have made a credible showing that similarly-situated non-Black truckers could have been, but were not, subjected to more rigorous inspections and searches at the Lordsburg POE.  Defendants have, therefore, established that Officer Strain's actions had a discriminatory effect.

The second prong requires a showing that Officer Strain was motivated by a discriminatory purpose.  Though the discriminatory purpose need not be the only purpose, it "must be a motivating factor in the decision."  *Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996).  Discriminatory intent can be shown by either direct or circumstantial evidence.  *See Alcaraz-Arellano*, 441 F.3d at 1264 (*citing United States v. Deberry*, 430 F.3d 1294, 1299 (10th Cir. 2005)).  "[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts."  *Washington v. Davis*, 426 U.S. 229, 242 (1976).  Defendants have satisfied this requirement.

Evidence of record in the *Blackwell* case demonstrates that, at the Lordsburg POE, Officer Strain arrests Black truck drivers at a rate that is twice their representation in the population of truck drivers passing through the POE.  *Blackwell v. Denko, et al.*, CIV 09-0377 MCA/WPL (Doc. 88-3 at 6).  However, "the percentage of Blacks arrested by Officer Strain as the result of patrolling (where, as Dr. Williams hypothesized, it is more difficult for Officer

Strain to confirm the driver's ethnicity prior to initiating law enforcement activity) closely corresponds to the percentage of Black truckers in the population of truckers passing through the POE." CIV 09-0377 MCA/WPL (Doc. 176). This discrepancy reveals that Officer Strain targets Black truckers when he is able to discern their race.

Significantly, Judge Armijo found that:

> Notwithstanding his denial of racial profiling, Officer Strain has been proceeding on the assumption that Black truckers are more likely than White truckers to be involved in transporting illegal drugs. Accordingly, Officer Strain selects Black truckers as a group for inspections at a disproportionately higher rate than their representation in the general population of truckers, and the inspections to which White truckers are subjected.

CIV 09-0377 MCA/WPL (Doc. 176). Officer Strain's assumption and actions thereon constitute direct evidence of racial discrimination.

There is also evidence that other law enforcement officers were aware of the discrimination. In a deposition in *Blackwell v. Denko*, DEA Agent Tenille Kinsey testified that, after she voiced her concern that she only observed African American males being arrested at the Lordsburg POE, NMMTD requested that she no longer be assigned their cases. (Doc. 118-5, Def. Ex. E, Kinsey Deposition at 13-15). Agent Kinsey testified: "It was my belief that there was [sic] other races and ethnicities that could also be transporting narcotics and controlled substances through their checkpoints, but I felt they were only focused on African American males." (Doc. 118-5, Def. Ex. E, Kinsey Deposition at 16). DEA Agent Eric Hanson testified that in nine years he had 20-25 cases from the Lordsburg POE, and all involved African American males. (Doc. 118-5, Def. Ex. E, Hanson Deposition at 8). Agent Hanson was aware of one case that involved an Hispanic male. (Doc. 118-5, Def. Ex. E, Hanson Deposition at 8). Specifically, however, Agent Hanson testified: "There are other ethnicities driving trucks on I-

10 that I would think were hauling contraband as well." (Doc. 118-5, Def. Ex. E, Hanson Deposition at 8). The Court finds the evidence in the *Blackwell* case compelling proof of a discriminatory purpose.

> In its Findings of Fact and Conclusions of Law, the Court earlier stated that:
>
> Officer Strain did not select Defendants' tractor-trailer for inspection because Mr. Bernard is black. Officer Strain selected the tractor-trailer for inspection before he was able to determine the racial characteristics of the occupants. Officer Strain was unable to see the race of the individuals in the tractor because it was 10:00 p.m. at night and the distance between the drive window and the approaching tractor was too great to allow a person standing in the drive window to determine the racial characteristics of the occupants.

(Doc. 90 ¶ 22).

This finding was based on the testimony of Officer Strain. The Court reserved ruling on the credibility of Officer Strain's testimony in this regard. (Doc. 90 ¶ 28). Based on observations of Officer Strain's demeanor at the suppression hearing and the *Blackwell* record, the Court finds that Officer Strain's testimony was not credible on this point and sets aside its above-quoted finding. In any event, by the time Officer Strain began the inspection, he had the opportunity to observe Defendants' race.

The Honorable Robert W. Pratt, United States District Judge, has discussed how the law "imposes a nearly impossible burden on the Defendant" in a selective-enforcement case. *United States v. Benitez*, 613 F. Supp. 2d 1099, 1102 n. 3 (S.D. Iowa 2009). If this burden can ever be met, however, it is met in this case. Having sworn a solemn oath to uphold the Constitution, the Court is unwilling to turn a blind eye to an obvious constitutional violation. When considered together, the record in this case and the record in the *Blackwell* case demonstrate, in damning fashion, that Officer Strain was motivated by discriminatory purpose. Based on the totality of

the circumstances, an invidious discriminatory purpose can readily be inferred.  Defendants have dispelled the presumption that Officer Strain has not violated the Equal Protection Clause with "clear evidence to the contrary," *Armstrong*, 517 U.S. at 465, and have made their case of racially selective enforcement in violation of the equal protection component of the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment.  The Government has not shown that Officer Strain would have made the same enforcement decision even if the discriminatory purpose had not been considered.  The question, then, becomes one of remedy.

   The Supreme Court has not decided whether suppression is an appropriate remedy for such a violation.  *See United States v. Armstrong*, 517 U.S. at 461 n. 2 (stating that the Supreme Court has not decided whether dismissal of indictment or other sanction is a proper remedy if defendant has been the victim of selective prosecution based on race).  Although the Tenth Circuit has not addressed this issue, the Sixth Circuit has suggested that  a 42 U.S.C. § 1983 action against the offending officer, rather than suppression of the evidence or dismissal of the indictment, provides the appropriate remedy for an equal protection violation. *United States v. Nichols*, 512 F.3d 789, 794 (6th Cir. 2008), *overruled on other grounds by United States v. Buford*, 632 F.3d 789, 794 (6th Cir.2008).  Other courts have recognized that the remedy for an equal protection violation in the criminal setting is uncertain.  *United States v. Williams*, 431 F.3d 296, 300 (8th Cir. 2005); *United States v. Lopez-Moreno*, 420 F.3d 420, 434 (5th Cir. 2005); *United States v. Chavez*, 281 F.3d 479, 486-87 (5th Cir. 2002); *United States v. Jennings*, 985 F.2d 562, 1993 WL 5927, at *4, (6th Cir. 1993) (unpublished) (suggesting suppression as the proper remedy for seizure of evidence in violation of Equal Protection Clause).  The Court

acknowledges that the exclusionary rule has been criticized as too high a price to pay for an unknown degree of deterrence. *See United States v. Harmon*, 785 F. Supp. 2d 1146, 1170 n. 4 (D. N.M. 2011). At the same time, the Court is convinced that civil remedies would be woefully inadequate to deter future racial discrimination at the Lordsburg POE. While it may seem out of step with current thinking to enlarge the reach of the exclusionary rule, this is an extraordinary case that cries out for an extraordinary remedy.

This Court agrees with the cogent analysis of Judge Pratt in *Benitez* that "exclusion would seem to be the proper remedy as it is highly doubtful that civil remedies would adequately deter police agencies from engaging in this unconstitutional and blatantly reprehensible behavior." *United States v. Benitez*, 613 F. Supp. 2d at 1102 n. 3. "The exclusionary rule serves the primary purpose of deterring unlawful police conduct by compelling respect for the constitutional guaranty in the only effectively available way - by removing the incentive to disregard it. This deterrence rationale applies also to evidence tainted by violations of the Fourteenth Amendment." *Id.* (*quoting Jennings*, 985 F.2d 562, 1993 WL 5927, *4 n. 2). Notably, "by keeping tainted evidence out, the exclusionary rule prevents courts from becoming accomplices in the willful disobedience of a Constitution they are sworn to uphold." *Id.* "Further, suppression of tainted evidence will assure the people - all potential victims of unlawful government conduct - that the government would not profit from its lawless behavior, thus minimizing the risk of seriously undermining popular trust in government." *Id.*

This Court does not believe that the law should leave such a grievous constitutional violation without an effective remedy. Admission of this evidence would condone discriminatory enforcement of the law, eviscerate the substance of the Fourteenth Amendment,

and render hollow the promise of equal protection.  This Court refuses to countenance the trampling of Defendants' rights by allowing the admission of evidence obtained through the discriminatory enforcement of the law.  All evidence resulting from Officer Strain's inspection and search must be suppressed as the fruit of the poisonous tree.  *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963).

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Suppress Evidence and Statements based on discriminatory enforcement of the law in violation of the Fifth Amendment and Fourteenth Amendments, (Doc. 53), is **GRANTED**.

**IT IS FURTHER ORDERED** that the pending motions are **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the motions hearing set for December 12, 2011, and jury trial set for January 9, 2012 are **VACATED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**